UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

FILED

00 NOV 17 AM 10: 49

U.S. DISTRICT COURT
N.D. OF ALABAMA

ALFRED and CONNIE GIST,        )
                               )
     Plaintiffs,               )
                               )
vs.                            )   Civil Action No. CV-00-S-2306-NW
                               )
BLACK BROTHERS COMPANY, INC.,  )
                               )
     Defendant.                )

ENTERED

NOV 17 2000

## MEMORANDUM OPINION

This case is a products liability action instituted against a third-party tortfeasor by a workman injured on the job. The action presently is before the court on a petition to intervene filed by ABCO Office Furniture Company ("ABCO") and its workers' compensation insurance carrier, The Hartford Insurance Company ("Hartford"). Upon consideration of the petition, pleadings, and briefs, this court concludes that the petition is due to be granted subject, however, to restrictions.

### I. Background

Plaintiffs, Alfred and Connie Gist, brought suit against Black Brothers Company, Inc.,[1] in the Circuit Court of Lauderdale County, Alabama, on July 20, 2000, claiming damages for injuries Alfred Gist sustained while using a "top and bottom adhesive spreader," a machine allegedly designed and manufactured by Black Brothers. On

---

[1] The notice of removal filed in this action on August 18, 2000, indicates that the correct name of the defendant may be "Black Bros. Co." *See* doc. no. 1, ¶ 1.

the date of his injury, Alfred Gist was employed by ABCO, which designs, manufactures, and distributes office equipment. According to plaintiffs' complaint, while on ABCO's premises in Florence, Alabama, and apparently within the line and scope of his employment, Alfred Gist sustained a severe degloving injury when his right hand was pulled into an unguarded nip point on the adhesive spreader. Plaintiffs subsequently instituted this action against Black Brothers alleging, among other things, that the spreader was sold in a defective and unreasonably dangerous condition, and that the defendant failed to provide adequate warnings and instructions regarding the safe use of its product. Plaintiff Connie Gist claims damages for a loss of her husband's consortium and services as a proximate result of his injury.

The action was removed to this court by Black Brothers on August 18, 2000, on the basis of the parties' diversity of citizenship and an assertion that the requisite jurisdictional amount is in controversy. *See* 28 U.S.C. §§ 1332, 1441, and 1446.

ABCO and Hartford now seek to intervene, saying that "[u]nder the Alabama Workers' Compensation Act, ABCO [and Hartford] ... became obligated to pay" medical expenses and indemnity benefits to Alfred Gist, due to the injury he sustained while using the adhesive spreading machine within the scope of his employment.[2]

---

[2] Petition for intervention (doc. no. 4) ¶ 2.

Petitioners assert that, under Alabama law, they are "entitled to reimbursement and subrogation for compensation and medical expenses paid to [Alfred A. Gist]."[3]

Plaintiffs filed a "limited objection to [the] petition for intervention," stating that they "do not object to the petitioners' intervention and participation in this case as long as the intervenors are not allowed to participate in the trial of this case." As a basis for limiting the participation of the petitioners to pre-trial proceedings only, plaintiffs point to Alabama's collateral source rule, and assert that petitioners' participation during the trial of the case would "erroneously allow the introduction of evidence" showing that Alfred Gist received benefits from collateral sources, thereby resulting in unfair prejudice to plaintiffs and unjust enrichment of the defendant.

## II. Discussion

The petition for intervention is premised upon a provision of the Alabama Workmen's Compensation Act which provides, in the part here pertinent, that whenever an employee has received benefits under the Act and subsequently seeks damages from a third-party tortfeasor, the employer "shall be entitled to reimbursement for the amount of compensation theretofore paid on account of injury or death." Alabama Code § 25-5-11(a) (1975) (1992 Replace. Vol.).

---

[3] *Id.* ¶ 4.

Further, "the employer shall be entitled to subrogation for medical and vocational benefits expended by the employer on behalf of the employee." *Id.*[4]

## A.    Rule 24(a):    Intervention of Right

Federal Rule of Civil Procedure 24(a) requires the court to

---

[4] Ala. Code § 25-5-11 pertains to action against third parties who may be jointly liable with employers for injuries or deaths sustained by workmen while on the job, and sub-section (a) provides, in part:

> If the injury or death for which compensation is payable under ... this chapter was caused under circumstances also creating a legal liability for damages on the part of any party other than the employer, ... the employee, or his or her dependents in the case of death, may proceed against the employer to recover compensation under this chapter or may agree with the employer upon the compensation payable under this chapter, and at the same time, may bring an action against the other party to recover damages for the injury or death, and the amount of the damages shall be ascertained and determined without regard to this chapter. ... <u>If the injured employee</u>, or in case of death, his or her dependents, <u>recovers damages against the other party</u>, <u>the amount of the damages recovered and collected shall be credited upon the liability of the employer for compensation</u>. If the damages recovered and collected are in excess of the compensation payable under this chapter, there shall be no further liability on the employer to pay compensation on account of the injury or death. <u>To the extent of the recovery of damages against the other party</u>, <u>the employer shall be entitled to reimbursement of the amount of compensation theretofore paid on account of injury or death</u>. If the employee who recovers damages is receiving or entitled to receive compensation for permanent total disability, then the employer shall be entitled to reimbursement for the amount of compensation theretofore paid, and the employer's obligation to pay further compensation for permanent total disability shall be suspended for the number of weeks which equals the quotient of the total damage recovery, less the amount of any reimbursement for compensation already made, divided by the amount of the weekly benefit for permanent total disability which the employee was receiving or to which the employee was entitled. For purposes of this amendatory act, <u>the employer shall be entitled to subrogation for medical and vocational benefits expended by the employer on behalf of the employee</u>: however, if a judgment in an action brought pursuant to this section is uncollectible in part, the employer's entitled to subrogation for such medical and vocational benefits shall be in proportion to the ratio the amount of the judgment collected bears to the total amount of the judgment. [Emphasis supplied.]

4

allow a party to intervene in an action as a matter of right in two
circumstances:

> (1)   when a statute of the United States confers an
>        unconditional right to intervene; or
>
> (2)   when the applicant **[i]** claims an interest
>        relating to the property or transaction which
>        is the subject of the action and **[ii]** the
>        applicant is so situated that the disposition
>        of the action may as a practical matter impair
>        or impede the applicant's ability to protect
>        that interest, unless **[iii]** the applicant's
>        interest is adequately represented by existing
>        parties.

No statute of the United States confers an unconditional right
upon petitioners to intervene in this diversity action.  The court
accordingly focuses upon subsection (a)(2).

Petitioners' statutory rights to reimbursement and subrogation
clearly give them "an interest relating to the ... transaction
which is the subject of the action."  The next question is whether
petitioners' ability to protect that interest will be impaired or
impeded by disposition of the action in their absence.

When confronted with a case raising the issue of whether the
rights of an employer's workers' compensation insurance carrier
under Alabama Code § 25-5-11(a) would be impaired, if the carrier
were denied intervention in an action between an injured worker and
a third-party tortfeasor pursuant to the state rule of civil
procedure corresponding to Fed. R. Civ. P. 24,[5] the Supreme Court

---

[5] Alabama Rule of Civil Procedure 24 provides, in pertinent part, that:

of Alabama recorded the following observations:

> Ordinarily, Rule 24 anticipates future litigation brought by or involving the intervenor. The purpose of allowing intervention in such cases is to discourage multiplicity of litigation and to relieve the intervenor from the possible prejudice of "*stare decisis* in later litigation involving the same questions of law and fact to which the unsuccessful applicant for intervention is finally a part." Committee Comments, ARCP, Rule 24. In the ordinary case, Rule 24 is to be liberally construed to allow intervention. *See Atlantis Development Corp. v. United States*, 379 F.2d 818 (5th Cir. 1967).
>
> In the [§ 25-5-11(a)] situation, however, no future litigation is contemplated.[6]   The compensation carrier

---

> **(a)  Intervention of Right**. Upon timely application, anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant **[i]** claims an interest relating to the property or transaction which is the subject of the action and **[ii]** the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless **[iii]** the applicant's interest is adequately represented by existing parties.
>
> **(b)  Permissive Intervention**. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Ala. R. Civ. P. 24(a) & (b).

[6] The original text of the *Hughes* opinion includes a footnote at this point, stating:

> The employer or the insurance carrier is permitted by [§ 25-5-11(a)] to bring suit only in the event the employee does not file suit against the third party within the time allowed by law. *See Liberty Mutual Insurance Co. v. Lockwood Green Engineering, Inc.* 273

will be reimbursed from the employee's judgment, if any, whether or not it intervenes. Since the employee is seeking exactly the same recovery as the insurer, the usual case will be resolved by the final clause of Rule 24(a)(2), "... the applicant's interest is adequately represented by existing parties."

Thus, in the [§ 25-5-11(a)] case, the motives for liberally allowing intervention are absent <u>and the right to intervene by the compensation carrier should be more restricted than in other Rule 24 cases</u>. Before intervention should be allowed over the objection of the plaintiff in a [§ 25-5-11(a)] third party action, <u>the applicant must meet a burden of showing to the satisfaction of the trial court that he can made a substantial contribution toward a favorable outcome of the plaintiff-employee's case</u>.

A mere showing that the applicant is the employer or his compensation carrier and the extent of its right of reimbursement is insufficient to meet this burden. If, on the other hand, the applicant can demonstrate active participation in the preparation of the third party action; that it has in its possession significant information or data essential to the prosecution of the third party suit; or that the employee-plaintiff is inadequately represented or otherwise less likely to succeed in his effort to effect recovery without the intervenor's active participation; then, in such event unencumbered intervention (*i.e.*, full participation in the litigation) should be allowed.

This is not to say that a petition to intervene in a [§ 25-5-11(a)] third party suit, over objection and

---

Ala. 403, 140 So.2d 821 (1962).

Hughes v. Newton, 295 Ala. 117, 121 n.2, 324 So. 2d 270, 273 n.2 (1975); *see also* Ala. Code § 25-5-11(d), providing in part:

In the event the injured employee, or his or her dependents, in case of death, do not file a civil action against the other party to recover damages within the time allowed by law, the employer or the insurance carrier for the employer shall be allowed an additional period of six months within which to bring a civil action against the other party for damages on account of the injury or death. ...

7

absent such showing, cannot be granted conditionally in
order that the intervention by made final at the time of
judgment to protect the intervenor's right of
reimbursement.  Likewise, nothing in this opinion is to
be construed as preventing the interested parties from
effecting reimbursement by agreement with or without
active intervention.  Moreover, we call attention to the
fact that a nonparty can be protected by judgment under
Rule 71, ARCP.

*Hughes v. Newton*, 295 Ala. 117, 120-21, 324 So. 2d 270, 273 (1975)

(emphasis supplied).[7]

While the decision of the Alabama Supreme Court in *Hughes* is

not binding upon this court,[8] the opinion is both instructive and

persuasive.   It is clear that plaintiffs and petitioners are

seeking the same recovery, and that petitioners are statutorily

entitled under Alabama Code § 25-5-11(a) to be reimbursed from any

judgment in favor of the plaintiffs, should there be one,

---

[7] It must be noted that the Supreme Court of Alabama ultimately reversed
the trial court in *Hughes*, for permitting intervention under the "extraordinary
facts" of that case:

> [T]here is no field of operation for the discretionary allowance of
> intervention where the insurance company, as here, represents the
> third party defendant and is also seeking, through intervention,
> status as a party plaintiff.  Such a patent conflict of interest
> exists as to bar the right of unencumbered intervention.  the
> potential for collusion is so inherent as to preclude a showing to
> the contrary within the spirit of Rule 24.

Hughes v. Newton, 295 Ala. 117, 120, 324 So.2d 270, 272 (1975).  After the
Alabama Supreme Court "dispos[ed] of the narrow issue involved" in *Hughes*, it
expressly "return[ed] to a discussion of the guidelines for allowing intervention
in the ordinary workmen's compensation case brought under" Alabama Code §25-5-11,
which are "unlike the normal Rule 24 situation."  *Id.* at 120, 324 So.2d at 272-
73.  It is that discussion which is quoted at length in the text of this
memorandum opinion.

[8] "It is wholly clear that the right to intervene in a civil action pending
in a United States District Court is governed by Rule 24 and not by state law."
7C Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1905, at 240
(2d ed. 1986).

regardless of whether they are allowed to intervene. Disposition of this action in the absence of petitioners, therefore, will not necessarily impair or impede their ability to protect such reimbursement and subrogation interests. Accordingly, intervention as a matter of right under Fed. R. Civ. P. 24(a)(2) is not appropriate.

**B.   Rule 24(b): Permissive Intervention**

Federal Rule of Civil Procedure 24(b) grants discretion to permit or deny intervention in two circumstances: first, when a statute of the United States confers a conditional right to intervene; or second, when an applicant's claim or defense and the main action have a question of law or fact in common.[9]

Permissive intervention rests within the sound discretion of this court, subject to two limitations: first, the "court shall consider whether the intervention will unduly delay or prejudice ... the rights of the original parties," Fed. R. Civ. P. 24(b)(2);

---

[9] Federal Rule of Civil Procedure 24(b) reads as follows:

**(b) Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

and second, "[i]f there is a common question of law of fact, intervention may be allowed even though the intervenor also raises other issues that are not presented by the main action."   7C Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1913, at 389 (2d ed. 1986).

It must be conceded that petitioners' claims raise questions of fact or law common to the claims presently before the court. Petitioners' rights to reimbursement and subrogation pivot upon plaintiffs' ability to prove one or more of their claims against Black Brothers.  Moreover, no party contends that "intervention will unduly delay" this action.

The decisive issue, therefore, is whether unencumbered intervention by the petitioners will unduly prejudice the rights of the original parties.  Plaintiffs contend that it will.  They assert that allowing unlimited participation by petitioners during the trial of this action will permit the jury to learn that Alfred Gist received workers' compensation benefits in violation of the applicable Alabama collateral source rule.

### 1.   The collateral source rule

The collateral source rule is the antipode of the general exclusionary rule which precludes a plaintiff from admitting evidence of <u>a defendant's</u> liability insurance coverage.[10]  The rule

---

[10] *See* Fed. R. Evid. 411; *see also* Ala. R. Evid. 411; I Charles W. Gamble, McElroy's Alabama Evidence § 189.04(1) (5th ed. 1996).

acts to "preclude the defendant from introducing evidence that the plaintiff had insurance coverage or has been indemnified for the accident in question."[11]

In most jurisdictions that have adopted some form of the so-called collateral source rule, the doctrine was a product of common law development, rather than legislative enactment. That certainly was true in Alabama. The first statement of the rule appeared in *Long v. Kansas City, Memphis & Birmingham Ry. Co.*, 170 Ala. 635, 54 So. 62 (1910), a case in which the defendant was sued for negligently setting fire to, and destroying the plaintiffs' property. One argument advanced by the railroad in bar of the plaintiffs' claim was that, since the plaintiffs' property had been insured, and the insurance company had reimbursed plaintiffs for the damage caused by fire, plaintiffs should not be allowed to recover. The Supreme Court of Alabama rejected that defense, saying:

> If A. negligently or intentionally burns B.'s house, and B. sues him for damages, surely A. cannot defeat this action by pleading and showing that C. had paid B. the full value of his house under a contract of insurance between B. and C., as to which A. is a perfect stranger. It is no concern of A.'s that C. may be, by contract or otherwise, subrogated to the rights of B. in the matter. The question, to whom will the damages belong when recovered, is one in which the defendant has no interest. It does not even affect the measure of his liability; and [it] is not a proper issue in the suit by B. against A. The insurance of the property is a mere indemnity, and

---

[11] I Charles W. Gamble, *supra* § 189.04(2), at 865 (footnote omitted).

11

insurer and insured are regarded as one person.  The mere
fact that the insurer has paid the insured cannot affect
the action against the wrongdoer who has destroyed or
injured the property, the subject of the insurance.

. . .

The payment is not made by the insurer for the benefit of
the wrongdoer, but is made in accordance with the
contract of insurance.  The owner, of course, has paid
the insurer for the insurance or indemnity; and whether
this be more or less than the damages for which the
wrongdoer is liable is no concern of the latter.

*Id.* at 641-42, 54 So. at 63-64.

As thus formulated, the common law collateral source doctrine
was both a rule of evidence and a rule of damages.  As a rule of
evidence, it precluded a defendant from introducing proof in a tort
suit that some of the plaintiff's damages had been paid by a
collateral source.  As a rule of damages, it precluded the
defendant from setting-off, or mitigating the size of a judgment by
the amount of compensation received by the plaintiff from
collateral sources.  The rationale for that has been summarized as
follows:

In tort cases, the plaintiff may receive benefits from a
third party who is in no way connected with the
defendant, and receipt of these benefits from the source
collateral to the defendant has the effect of lessening
the financial losses which the plaintiff would otherwise
have suffered.  Thus, if the basic goal of tort law is
only that of compensating plaintiff for his losses,
evidence of these benefits should be admitted to reduce
the total damages assessed against the defendant.  At the
same time, reducing recovery by the amount of the
benefits received by the plaintiff would be, according to

12

most courts, granting a "windfall" to the defendant by allowing him a credit for the reasonable value of those benefits.   Such a credit would result in the benefits being effectively directed to the tortfesor and from the intended party — the injured plaintiff.   If there must be a windfall, it is usually considered more just that the injured person should profit, rather than let the wrongdoer be relieved of full responsibility for his wrongdoing.   Thus, the courts generally have held that benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer.

22 Am.Jur.2d *Damages* § 566 (1988) (footnotes omitted).

### 2.   Legislative modifications of the common law rule

#### a.   Products liability actions & Ala. Code § 6-5-524

The Alabama Legislature first trespassed upon the common law formulation of the collateral source rule in 1979, with the enactment of a related set of statutory provisions intended to mitigate the amount of damages recoverable in products liability actions.   *See* Alabama Code §§ 6-5-520 — 6-5-524 (1975) (1993 Replace. Vol.).[12]   Section 6-5-522 provides:

---

[12] Alabama Code § 6-5-520 sets forth the legislature's findings and intent as follows:

> The legislature finds that product liability litigation has increased substantially and the cost of such litigation has risen in recent years.   The legislature further finds that these increases have an impact upon the price and availability of products.   It is the belief of the legislature that there are special reasons for modifying the collateral source rule in this state as it applies to product liability actions.   The legislature finds that the recovery by plaintiffs of medical and hospital expenses as damages where plaintiffs are reimbursed for the same medical and hospital expenses from other sources contributes to the increase in the cost of product liability litigation.   It is the intent of the legislature that plaintiffs be compensated fully for any medical or hospital expenses incurred as a result of injuries sustained from a breach of

In all product liability actions where damages for
any medical or hospital expenses are claimed and are
legally recoverable for personal injury or death,
evidence that the plaintiff's medical or hospital
expenses have been or will be paid or reimbursed (1) by
medical or hospital insurance, or (2) pursuant to the
medical and hospital payment provisions of law governing
workmen's compensation, shall be admissible as competent
evidence in mitigation of such medical or hospital
expense damages.  In such actions upon admission of
evidence respecting reimbursement or payment of medical
or hospital expenses, the plaintiff shall be entitled to
introduce evidence of the cost of obtaining reimbursement
or payment of medical or hospital expenses.  Such portion
of the costs of obtaining reimbursement or payment of
medical or hospital expenses as the trier of facts finds
is reasonably related to the reimbursement or payment
received or to be received by the plaintiff shall be a
recoverable item of such damages for medical or hospital
expenses.  [Emphasis supplied.]

That which the legislature took away in § 6-5-522, however, it

partially restored in § 6-5-524, providing that:

Upon proof by the plaintiff to the court that the
plaintiff is obligated to repay the medical or hospital
expenses which have been or will be paid or reimbursed,
no evidence relating to such reimbursement or payment not

---

product liability laws, but that plaintiffs not receive compensation
more than once for the same medical and hospital expenses.

Alabama Code § 6-5-521(a) defines the phrase "product liability action" in the
following manner:

A "product liability action" means any action brought by a
natural person for personal injury, death, or property damage caused
by the manufacture, construction, design, formula, preparation,
assembly, installation, testing, warnings, instructions, marketing,
packaging, or labeling of a manufactured product when such action is
based upon (1) negligence, (2) innocent or negligent
misrepresentation, (3) the manufacturer's liability doctrine, (4)
the Alabama extended manufacturer's liability doctrine as it exists
or is hereafter construed or modified, (5) breach of any implied
warranty, or (6) breach of any oral express warranty and no other.
A product liability action does not include an action for
contribution or indemnity.

14

> otherwise admissible shall be admissible as a result of
> this division.   [Emphasis supplied.]

This provision has been interpreted (and correctly so) by another judge of this court as "precluding the admission of evidence regarding payment of medical expenses by an insurer where the insurer has subrogation rights and the plaintiff makes proof of these rights." *Craig v. F.W. Woolworth Co.*, 866 F. Supp. 1369, 1371 (N.D. Ala. 1993) (Guin, J.), *aff'd*, 38 F.3d 573 (11th Cir. 1994); *see also id.*, 866 F. Supp at 1372 n.5 ("Section 6-5-524 acts as [a] savings provision allowing the plaintiff to prevent the admission of evidence regarding insurance coverage by proving to the court the existence of subrogation rights."); *American Legion Post Number 57 v. Leahey*, 681 So. 2d 1337, 1340 n.2 (Ala. 1996) ("[F]or product liability actions, if the collateral source payer is subrogated to the plaintiff's recovery, § 6-5-524 renders all of the evidence on the subject inadmissible, just as under the common law collateral source rule"), *overruled on other grounds by Marsh v. Green*, 2000 WL 1367607 (Ala. Sept. 22, 2000).  As petitioners candidly admit, § 6-5-524 "nullifies § 6-5-522 if the plaintiff is obligated to repay the medical expenses."[13]

In *Craig*, Judge Guin required only that the plaintiff produce "a copy of the applicable insurance policy which established the

---

[13] Petitioners'/Interveners' Brief Pursuant to October 12, 2000 Order (doc. no. 12) ¶ 3.

insurer's subrogation rights" as a prerequisite to invocation of the bar against introduction of evidence relating to the payment of of medical expenses by the insurer provided by § 6-5-524. Here, even that is not necessary.

Defendant Black Brothers "asserts that it is entitled to introduce evidence demonstrating that [Alfred Gist's] medical and/or hospital expenses have been or will be paid or reimbursed by ABCO and Hartford <u>until Plaintiff affirmatively proves to the Court</u> <u>that he is obligated to repay these expenses to ABCO and</u> <u>Hartford</u>."[14]   That is nonsense. Plaintiffs' obligation to reimburse ABCO and Hartford is not a product of contract, but is mandated by statute. There is nothing more that plaintiff must "affirmatively prove" to this court. If this court's analysis could stop at this point, therefore, the result would be clear. More must be considered, however.

### b.   Ala. Code § 12-21-45

Eight years after the enactment of that set of statutory provisions intended to mitigate the amount of damages recoverable in products liability actions (Alabama Code § 6-5-520 *et seq.*), and during that period when the tornadic winds of "tort reform" first thundered through the State, the Alabama Legislature again trespassed upon the common law collateral source rule through

---

[14] Defendant Black Bros. Co.'s Response to Court's Order of October 12, 2000 (doc. no. 10) ¶ 4, at 2 (emphasis supplied).

enactment of the following statute:

> (a)   In all civil actions where damages for any medical or hospital expenses are claimed and are legally recoverable for personal injury or death, evidence that the plaintiff's medical or hospital expenses have been or will be paid or reimbursed shall be admissible as competent evidence.   In such actions upon admission of evidence respecting reimbursement or payment of medical or hospital expenses, the plaintiff shall be entitled to introduce evidence of the cost of obtaining reimbursement or payment of medical or hospital expenses.

> (b)   In such civil actions, information respecting such reimbursement or payment obtained or such reimbursement or payment which may be obtained by the plaintiff for medical or hospital expenses shall be subject to discovery.

> (c)   Upon proof by the plaintiff to the court that the plaintiff is obligated to repay the medical or hospital expenses which have been or will be paid or reimbursed, evidence relating to such reimbursement or payment shall be admissible.

> (d)   This section shall not apply to any civil action pending on June 11, 1987.

Alabama Code § 12-21-45 (1975) (1995 Replace. Vol.).

### i.   The extinction of § 12-21-45

Nine years after the enactment of § 12-21-45, the statute was struck down by the Supreme Court of Alabama in *American Legion Post Number 57 v. Leahey*, 681 So. 2d 1337 (Ala. 1996) (holding statute violated due process and equal protection guarantees of State Constitution).   *Accord Craig*, 866 F. Supp. at 1373; *see also Killian v. Melser*, 792 F. Supp. 1217 (N.D. Ala. 1992).

17

### ii.   The resurrection of § 12-21-45

Three days prior to the filing of plaintiffs' limited objection to intervention, however, in one of those stunning reversals of position for which the Alabama Supreme Court has become infamous over the past two decades, during a period of steadily increasing influence by special-interest and partisan political groups upon the state judicial process, the Court overruled its decision in *Leahey*, and declared § 12-21-45 to be constitutional.   *Marsh v. Green*, 2000 WL 1367607, at *6-*9 (Ala. Sept. 22, 2000).   This court therefore must determine the impact, if any, of § 12-21-45's resurrection upon § 6-5-524.

### c.   The interplay between Ala. Code §§ 6-5-524 & 12-21-45

Black Brothers asserts that Judge Guin's interpretation of § 6-5-524 in *Craig* was overruled by the Alabama Supreme Court's decision in *Marsh*.[15]   That assertion is devoid of merit.   *Marsh* did not address § 6-5-524, but only § 6-5-545 (enacted as part of the Alabama Medical Liability Act of 1987) and § 12-21-45.

The nub of the issue confronting this court is captured by plaintiffs' attorney in a well-written and thoughtful brief:   that is, does the qualifying phrase "not otherwise admissible" found in the last clause of § 6-5-524[16] "leave the door cracked for an effort

---

[15] *See* Defendant Black Bros. Co.'s Response to Court's Order of October 12, 2000 (doc. no. 10) ¶ 3, at 2.

[16] "Upon proof by the plaintiff to the court that the plaintiff is

to introduce collateral source evidence under § 12-21-45"?[17] Stated somewhat differently, the pertinent question "is whether Ala. Code § 12-21-45 overrides Ala. Code § 6-5-524 and allows the introduction of collateral source evidence in [the trial of] this case"?[18] This court thinks not. *See, e.g., Craig,* 866 F. Supp. at 1372 & n.3 (rejecting defendant's argument that "this later enacted statute," *i.e.,* § 12-21-45, passed in 1987, "abrogates section 6-5-524," enacted in 1979).

As the Eleventh Circuit acknowledged in *Bradford v. Bruno's, Inc.,* 41 F.3d 625 (11th Cir. 1995), *opinion withdrawn and superceded on other grounds,* 94 F.3d 621 (11th Cir. 1996), the Alabama Legislature has enacted more than one group of statutes modifying (or abrogating) the common law collateral source rule. One group, of course, is found in Alabama Code §§ 6-5-522 & 6-5-524, which applies only to products liability actions. Another is found in the Medical Liability Act of 1987, Alabama Code § 6-5-545, pertaining only to actions against health care providers for breach of the applicable standard of care. The final statutory provision is Alabama Code § 12-21-45, and it "is applicable in <u>all other</u>

---

obligated to repay the medical or hospital expenses which have been or will be paid or reimbursed, no evidence relating to such reimbursement or payment <u>not otherwise admissible</u> shall be admissible as a result of this division." Ala. Code § 6-5-524 (emphasis supplied).

[17] Plaintiffs' Memorandum Brief on Issue of Intervention and Participation at Trial by Workman's compensation Carrier (doc. no. 11), at 2.

[18] *Id.* at 3.

personal injury or wrongful death cases." *Bradford*, 41 F.3d at 626 (emphasis supplied).  In other words, § 12-21-45 does not <u>supercede</u> sections  6-5-522,  6-5-524,  or  6-5-524,  but  instead  fills  the interstitial gaps.  That essentially was Judge Guin's conclusion in *Craig*, which this court hereby adopts:

> As  a  matter  of  statutory  interpretation,  whenever possible  a  specific  statute  relating  to  a  specific subject is taken as an exception to a statute of general applicability  in  an  effort  to  harmonize  the  two.   ... Here  section  6-5-524  applies  specifically  to  product liability cases while section 12-21-45 applies to civil suits generally.  Further, the law does not favor repeal of statutes by implication.  Nothing in section 12-21-45 indicates a legislative intent to repeal section 6-5-524. The law favors construction which harmonizes statutory provisions.  ...  Finding that section 6-5-524 may stand as an exception to section 12-21-45, if the latter is taken as substantive, is in keeping with these well established doctrines of statutory interpretation.

*Craig,* 866 F. Supp. at 1372 (citations omitted).

This court therefore concludes that any evidence pertaining to Alfred Gist's receipt of workers' compensation benefits and medical or hospital payments should not, and shall not, be admissible upon the trial of this action.  The court now turns to a description of the limitations which shall apply to the intervenors' participation in the remainder of this action.

**C.   Scope of Intervenors' Participation**

The Eleventh Circuit reversed another judge of this court for refusing a plaintiff's request to limit the trial participation of

an intervening workers' compensation insurance carrier in a products liability action against a third-party tortfeasor for injuries received by a workman on the job, while using a product manufactured by the defendant. *Southern v. Plumb Tools, a Division of O'Ames Corp.*, 696 F.2d 1321 (11th Cir. 1983) (*per curiam*). The court concluded that unfettered participation allowed the jury to learn that the injured employee had received workers' compensation benefits in violation of the collateral source rule.

> [U]nencumbered intervention ... gives the jury the impression that plaintiff has already been compensated and is now attempting to recover again from defendants. ... This is precisely what occurred in this case. The district court allowed evidence that Liberty Mutual had paid Southern $17,100. Counsel for Liberty Mutual told the jury this money would be paid back ... if they returned a verdict for the plaintiff, and the district court so instructed the jury. This was particularly prejudicial since the [third-party tortfeasor] defendant sought to disprove its own liability by showing negligence on the part of the plaintiff's employer. In effect, the jury was told that a verdict for the plaintiff would enure to the benefit of the employer, whom the defendant vigorously contended was negligent. ...

*Id*. at 1324.[19] The court determined that "imposing the conditions that plaintiff sought in this case would have been an appropriate method of keeping evidence of the payment of workmen's compensation benefits from the jury." *Id*. at 1323.

---

[19] The court's decision in *Southern* was complicated by the fact that the intervening insurance carrier, Liberty Mutual Insurance Company, was both the workers' compensation insurance carrier for the injured plaintiff's employer, and, the liability insurance carrier for the third-party tortfeasor. *Southern v. Plumb Tools*, 696 F.2d 1321, 1322 (11th Cir. 1983) (*per curiam*).

In like manner, this court concludes that, in order to avoid unfair prejudice to plaintiffs, ABCO and Hartford's intervention should be restricted as follows:  ABCO and Hartford may participate in all stages of this proceeding, except trial of the case before a jury; and, neither plaintiffs nor defendant shall, at any time in the presence of the jury, make reference to the payment of workers' compensation benefits by ABCO or Hartford to Alfred Gist.

An appropriate order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this **17th** day of November, 2000.

United States District Judge