UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

ALFRED and CONNIE GIST,        )
                               )
     Plaintiffs,               )
                               )
vs.                            )    Civil Action No. CV-00-S-2306-NW
                               )
BLACK BROTHERS COMPANY, INC.,  )
                               )
     Defendant.                )

## MEMORANDUM OPINION

This action is before the court on the following motions: (1) plaintiffs' motion to shorten time in which defendant is required to respond to plaintiffs' third request for production of documents (doc. no. 27); (2) plaintiffs' motion to compel (doc. no. 28); and (3) defendant's motion to bifurcate liability and damages issues for trial (doc. no. 32). Upon consideration of the motions, pleadings, briefs, and arguments of counsel, the court concludes that the motion to shorten time is due to be denied as moot, the motion to compel is due to be granted, and the motion to bifurcate issues for trial denied.

### I. BACKGROUND

Alfred and Connie Gist ("plaintiffs") initiated this products liability action against defendant, Black Brothers Company, Inc., in the Circuit Court of Lauderdale County, Alabama, on July 20, 2000. The action was removed to this court on August 18, 2000, due

to the diversity of the parties' citizenship, and an assertion that the requisite jurisdictional amount is in controversy. *See* 28 U.S.C. §§ 1332, 1441, and 1446. Plaintiffs contend that Alfred Gist sustained a serious degloving injury to his right hand while using a top and bottom adhesive spreader, a machine designed and manufactured by defendant. Plaintiffs assert that at the time of his injury, Alfred was working within the line and scope of his employment with ABCO, Inc., a Florence, Alabama, company which designs, manufactures, and distributes office equipment. Apparently, while Alfred was attempting to clean grease and gear oil from one of the spreader's rolls, his hand was drawn into an unguarded nip point on the machine, wedging his hand between two rollers and resulting in significant injuries.

Thereafter, plaintiffs instituted this action against defendant alleging, among other things, that the spreader was designed in a defective and unreasonably dangerous condition, and that the defendant failed to provide adequate warnings and instructions regarding the safe use of its product. Alfred's wife, Connie Gist, has claimed damages for the loss of her husband's consortium and services as a direct result of his injury.

## II. DISCUSSION

### A.   Plaintiffs' motion to shorten time

Rule 34 of the Federal Rules of Civil Procedure provides that a party shall respond to a request for the production of documents within 30 days after service of the request. In a motion dated May 23, 2001, plaintiffs moved to shorten this time frame, asserting that defendant could respond to plaintiffs' third request for production of documents within 15 days. Plaintiffs' third request for production consists of but one request, seeking, "[a] copy of [defendant's] current document retention policy, as well as any and all prior versions thereto dating back to 1970."[1] In light of the fact that the requested 15 day period has long since passed, the court will deny this motion as moot. In the event that defendant has not provided this information, plaintiffs may make a good faith effort to confer with defendant regarding the request. Should that not resolve the issue, plaintiffs may then move for a motion to compel pursuant to Rule 37 of the Federal Rules of Civil Procedure.

### B.   Plaintiffs' motion to compel

The machine that Alfred Gist was using at the time of his injury was a Model 22-D, 875 Series top and bottom glue spreader.

---

[1] Motion to shorten time (doc. no. 27), attachment (plaintiffs' third request for production), at 4.

The Model 22-D was manufactured by defendant in 1990, and implemented basic design and engineering technology that was patented in 1944. In late 1998 or early 1999, defendant built a prototype top and bottom glue spreader consisting of a different design. This machine was dubbed the AS-2000. It was guarded in a manner different than Model 22-D, in that it had an enclosed design, with panels surrounding the machine's rollers. The AS-2000 prototype was created for a trade show in Atlanta, and has been located in defendant's manufacturing facility at all times.[2] The AS-2000 has never been sold, and was not in existence at the time of Mr. Gist's injury in July of 1998.[3]

Plaintiffs have filed a motion to compel the production of documents requested in items 15 and 16 of plaintiffs' second request for production. The information sought pertains to the AS-2000. The requests specifically sought:

> 15. Any and all documents evidencing, concerning or reflecting the design, engineering, assembly and manufacture of the AS-2000 prototype spreader/coater, including without limitation all drawings, photographs, blueprints, specifications, notes, design criteria, design objectives, specifications, etc.
>
> 16. Any and all documents prepared, generated or

---

[2] Defendant's memorandum in opposition to plaintiffs' motion to compel (doc. no. 31), attachment C (Wood deposition), at 135-136, 140.

[3] *Id.*

4

> otherwise utilized in the promotion of the AS-2000 prototype spreader/coater at the trade show described by Stephen Wood on Page 140 of his deposition, including without limitation the brochure described by Mr. Wood on Page 138 of his deposition.[4]

Plaintiffs contend that this information is necessary to their case because, under the Alabama Extended Manufacturers Liability Doctrine, they have a duty to prove "that a safer, practical, alternative design was available to the manufacturer that would have eliminated or in some way reduced" Alfred Gist's injuries.[5] Plaintiffs point out that

> [w]hen questioned about the technology involved in designing and building the AS-2000 prototype, a former design engineer for Black Brothers could not state with certainty that such technology was not available to the defendant in 1985, some five years before the glue spreader involved in this lawsuit was manufactured by the defendant. *Politsch Depo.*, p. 110. Instead, Mr. Politsch went on to testify that in terms of prominence, there are many design features and concepts "that have been around for 30, 40 years but they haven't really been a ... prominent part ... of the everyday activities of our business or anybody's business." *Id.*, p. 111.[6]

Based on Politsch's testimony, plaintiffs contend that it is likely that the requested information regarding the AS-2000 will lead to admissible evidence pertaining to whether an alternative design was available to the defendant "before the glue spreader in this

---

[4] Plaintiffs' motion to compel (doc. no. 28), ¶ 4.
[5] *Id.*
[6] *Id.*, ¶ 5

lawsuit was manufactured."[7]

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides in pertinent part:

> (b) *Discovery Scope and Limits.* Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
>> (1) *In General.* Parties may obtain discovery regarding any matter, not privileged, <u>that is relevant to the claim or defense of any party</u>, including the existence, description, nature, custody, condition, and location of books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. ... <u>Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence</u>. ...

Fed. R. Civ. P. 26(b)(1) (emphasis supplied). As a result of this rule, the threshold issue in a discovery dispute is relevancy. *See* 8 Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2008, at 99 (2d ed. 1994) ("Perhaps the single most important word in Rule 26(b)(1) is 'relevant' for it is only relevant matter that may be the subject of discovery.").

Relevance has been construed liberally under Rule 26(b)(1), to "encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be

---

[7] *Id.*, ¶ 6.

6

in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). Indeed,

> it is not too strong to say that a request for discovery should be considered relevant if there is <u>any possibility</u> that the information sought may be relevant to the subject matter of the action. If protection is needed, it can better be provided by the discretionary powers of the court under Rule 26(c) than by a constricting concept of relevance.

8 Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2008, at 108-109 (2d ed. 1994) (emphasis supplied).

Clearly, whether an alternative design existed at the time the Model 22-D was manufactured is not only relevant, but of paramount importance to plaintiffs' claims. *See Connally v. Sears, Roebuck & Company*, 86 F. Supp. 2d 1133, 1137 (S.D. Ala. 1999) (holding that under Alabama law, a manufacturer will be held liable for injuries resulting from an inherently dangerous product only if the plaintiff can prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the product).

Moreover, it appears that the request is likely to lead to admissible evidence on this issue. Testimony from William Politsch, a former design engineer for defendant, suggests that the technology encompassed by the AS-2000 may have existed "for 30 [or]

40 years," despite the fact that it has not "really been a ... prominent part ... of [defendant's] everyday ... business...."[8]

Having concluded that the discovery requests regarding the AS-2000 are relevant to plaintiffs' claims, the court concludes plaintiffs' motion to compel is due to be granted. The court will allow discovery on this issue, because this information may lead to admissible evidence on whether there existed an alternative top and bottom spreader design at the time the Model 22-D was manufactured.

## C.  Defendant's motion to bifurcate issues for trial

Finally, defendant requests that this court enter an order pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, bifurcating the issues of liability and damages for trial. Rule 42(b) provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue...." Fed. R. Civ. P. 42(b).

The decision to bifurcate issues for trial rests within the sound discretion of the trial court. *Beauchamp v. Russel*, 547 F. Supp. 1191, 1199 (N.D. Ga. 1982). Courts within this circuit are cautioned, however, that bifurcation is not the "usual course that

---

[8] Plaintiffs' motion to compel (doc. no.28), attachment (Politsch deposition), at 111.

8

should be followed." *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1324-1325 (5th Cir. 1976) (citation omitted).[9] See also Fed. R. Civ. P. 42 advisory committee note (warning that "separation of issues for trial is not to be routinely ordered").

A court considering whether bifurcation of issues is warranted should consider several factors, such as "whether separate trials will be conducive to expedition of the litigation and to efficient judicial administration, whether separate trials will avoid prejudice, and whether the issues sought to be tried separately are significantly different." *Beauchamp*, 547 F. Supp. at 1199.

Defendant contends that each of these factors weigh in favor of the bifurcation of the issues, while plaintiff asserts that they do not. The court will address each of these consdierations in turn.

### 1. Will separate trials promote efficient judicial administration?

Defendant argues that separate trials on liability and damages will promote efficient judicial administration for two reasons. First, defendant states that several witnesses (Mrs. Gist and three expert witnesses) will be testifying solely to the issue of

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

9

damages. Should the jury resolve the issue of liability in favor of the defendant, this would obviate the need for the testimony of these witnesses, thus "saving several days of trial time."[10] Next, defendant contends that, in the event a jury finds in favor in plaintiffs on the issue of liability, bifurcation would facilitate voluntary settlement by the parties.

Plaintiffs counter by stating that two trials will result in several witnesses being called to testify two different times. Plaintiffs point to Alfred Gist's co-workers, who will likely testify as to both the liability and damages aspects of this case.[11] The court finds plaintiffs' arguments on this point persuasive. Indeed, having to recall multiple witnesses to testify at two separate proceedings will "actually inhibit, rather than promote, efficient judicial administration." *Brown v. Advantage Engineering, Inc.*, 732 F. Supp. 1163, 1171 (N.D. Ga. 1990). Plaintiffs also take issue with defendant's contention that the testimony pertaining to Alfred Gist's damages will take "several days." Plaintiff points out that examination of its two experts

---

[10] Defendant's memorandum in support of defendant's motion for bifurcation, at 5.

[11] "Those ... witnesses would [provide testimony] concerning their observations of Mr. Gist following the accident, his recovery, his return to work, his ability to perform his tasks and responsibilities at work, etc." Plaintiff's memorandum in opposition to defendant's motion for bifurcation, at 3.

will only last approximately 3 hours and 15 minutes.[12] This fact undermines defendant's arguments relating to the need to preserve judicial resources.

Finally plaintiffs argue that, "a jury determination of liability [in their favor] would give [them] little incentive to" accept a post-liability verdict settlement offer by defendant. As plaintiffs' brief correctly points out, at that juncture plaintiffs would have little incentive to settle the case, "having successfully overcome the defendant's affirmative defenses of contributory negligence and assumption of the risk," thereby presented with the opportunity to offer evidence of plaintiffs' significant damages to the jury.[13]

Based on the above, the court finds that bifurcation will not promote judicial efficiency in this case.

**2.   Will a single trial on the issues prejudice the parties?**

Defendant next argues that bifurcation is appropriate because it will be prejudiced by the jury's inevitable sympathy for Alfred Gist, a workman who sustained extensive injuries as a result of the accident. Defendant suggests that photographic evidence depicting Alfred's hand after the incident are so "gruesome" that they will

---

[12] *Id.* at 4.
[13] *Id.* at 2.

confuse the jurors' deliberations on the liability issue. An identical argument was made to the court in *Brown v. Advantage Engineering, Inc.*, 732 F. Supp. 1163 (N.D. Ga. 1990), but rejected. There, the court stated: "This reasoning, however, would support bifurcation in any negligence action brought by a sympathetic plaintiff. The court is confident that with the aid of cautionary instructions, a jury will be able to fairly and impartially determine both liability and damages in a single trial." *Id.* at 1171. This court agrees that any possibility of prejudice that may arise by holding a single trial in this case can be remedied by giving cautionary warnings and limiting instructions to the jury. If defendant's counsel truly believes that such instructions will be necessary, then counsel should submit proposed language at the pretrial conference.

### 3. Are the issues so separate and distinct as to warrant separate trials?

Finally, defendant argues that bifurcation is appropriate because the issues of liability and damages are wholly separate and distinct. This court disagrees. Motions seeking bifurcation of issues are frequently "denied when the evidence on the two subjects [*i.e.* damages and liability] are so intertwined that efficiency will not be achieved or confusion may result from any attempt at

separation." Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 2390, at 505 (2d ed. 1995). As mentioned above, there are several witness in this case who will likely testify to both damages and liability. This fact weighs in favor of a finding that the issues are not wholly separate. *Brown*, 732 F. Supp. at 1171 (holding that the need to recall several witnesses to testify at both stages of a bifurcated proceeding "indicates that the issues of liability and damages are not significantly different"); *Hanlin Group, Inc. v. Village of Solvay*, No. 88-CV-773, 1990 WL 164694. at *1 (N.D.N.Y Oct. 15, 1990) (holding that bifurcation of issues is inappropriate where it is likely that the "same witnesses may be needed to testify as to both issues of liability and damages, and ... evidence pertaining to these issues may very well overlap"). Moreover, evidence on the liability and damages issues may further overlap because it is likely that proof of Alfred's injuries will be relevant for purposes of accident reconstruction. Accordingly, this court finds that the issues of liability and damages are not wholly separate and distinct so as to justify bifurcated proceedings.

Having considered the applicable factors which would justify two separate trials on the issues of liability and damages, and

finding that they weigh against bifurcation, the court concludes that defendant's motion is due to be denied.

### III. CONCLUSION

For the foregoing reasons, plaintiffs' motion to shorten time (doc. no. 27) is due to be denied as moot, plaintiffs' motion to compel (doc. no. 28) shall be granted, and defendant's motion to bifurcate liability and damages issues for trial (doc. no. 32) will be denied. An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this **27th** day of July, 2001.

United States District Judge